Case 1:18-cr-00076-ARR-ST   Document 1   Filed 02/14/18   Page 1 of 7 PageID #: 1

JMK:WK:SSS
F. #2017R02216

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MARK GOLDBERG,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
CLERK
2018 FEB 14  PM 2:45
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

I N D I C T M E N T

CR. No. 18 0076
(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18,
U.S.C., §§ 981(a)(1)(C), 1349, 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

KUNTZ, J.

TISCIONE, M.J.

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendant and the Publicly Traded Company

        1.    The defendant MARK GOLDBERG was a United States citizen who resided in Queens, New York. GOLDBERG was the chief executive officer ("CEO") of In Ovations Holdings, Inc.

        2.    Prior to October 2013, the defendant MARK GOLDBERG was the CEO of Marine Exploration, a publicly traded corporation whose shares traded on the over-the-counter ("OTC") exchange under the ticker symbol MEXP ("MEXP"). On or about October 15, 2013, MEXP underwent a corporate restructuring in which it changed its name to In Ovations Holdings, Inc. In Ovations Holdings, Inc., a Colorado corporation, was a publicly traded corporation whose shares traded on the OTC exchange under the ticker symbol INOH ("INOH"). INOH's common stock was registered with the United States Securities and Exchange Commission (the "SEC") under Section 12 of the Securities Exchange Act of 1934. In public

statements that it issued at various times, INOH purported to be involved in various different businesses, as described in part below:

    (a)    In or about late 2015, INOH purportedly became a medical billing company.

    (b)    In or about May 2017, INOH purported to have entered, through its subsidiary Electro Verde, Inc., into a marketing distribution agreement with Seychelle Water Environmental Technologies, Inc., which reputedly manufactured and supplied revolutionary water filtration systems featuring breakthrough technology.

    (c)    In or about June 2017, INOH purportedly entered the marijuana water source business.

    3.    INOH was a "penny" stock. A "penny" stock was a stock of a publicly traded U.S. company that had a low market capitalization. Penny stocks were often subject to price manipulation because they were thinly traded and subject to less regulatory scrutiny than stocks that traded on notable exchanges. Additionally, large blocks of penny stock were often controlled by a small group of individuals, enabling those in the group to control and orchestrate manipulative trading in those stocks. INOH was listed on the Pink Sheets, a stock quotation system for penny stocks.

## II. The Fraudulent Scheme

    4.    In or about September 2013, the defendant MARK GOLDBERG and his co-conspirators began acquiring large blocks of INOH for little or no cost. At the time that GOLDBERG and his co-conspirators purchased their interests in INOH, INOH had little or no trading volume. After acquiring shares of INOH, GOLDBERG and his co-conspirators

employed various means to inflate artificially and fraudulently INOH's share prices and trading volumes.

5. As a part of the scheme, the defendant MARK GOLDBERG and his co-conspirators executed and caused others to execute securities transactions in INOH based, in whole and in part, on material, non-public information that GOLDBERG obtained in his capacity as INOH's CEO and then improperly disclosed to co-conspirators in advance of public announcements by INOH. The co-conspirators also transferred shares of INOH into the possession and control of stock promoters, and paid these promoters with shares of stock and cash in return for their participation in the scheme.

6. In furtherance of the fraudulent scheme, the defendant MARK GOLDBERG, together with co-conspirator stock promoters, fraudulently promoted INOH through the use of press releases, email blasts, chat rooms, social networking sites, message boards and stock-touting websites. This promotional activity for INOH did not reveal the interests of GOLDBERG and his co-conspirators in INOH and their involvement in the promotion campaigns.

7. The defendant MARK GOLDBERG and his co-conspirators fraudulently coordinated their trading activity in INOH by issuing press releases and other promotional media to inflate INOH stock's price and to create the appearance of genuine market interest in INOH. For example, GOLDBERG and his co-conspirators engaged in "matched trades," which were orders to buy and sell securities entered with the knowledge that a prearranged matching order on the opposite side of the transaction would be entered, with shares of INOH to allow one shareholder to liquidate that shareholder's position. GOLDBERG and his co-conspirators also "walked up" INOH, that is, they maintained and increased its price by buying and selling the

stock in a coordinated manner to increase the stock price without liquidating large portions of the shareholder's position. GOLDBERG and his co-conspirators additionally engaged in "wash sales," which were sales between accounts owned by the same person. Using matched trades, walking up and wash sales, GOLDBERG and his co-conspirators were able artificially to increase the trading volumes and share prices of INOH.

8. After fraudulently inflating the share price and trading volume of INOH, the defendant MARK GOLDBERG, together with others, sold the INOH stock for a profit to victim investors, some of whom were located in Brooklyn and Queens, New York.

## COUNT ONE
(Conspiracy to Commit Securities Fraud)

9. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

10. In or about and between June 2013 and February 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARK GOLDBERG, together with others, did knowingly and intentionally conspire: (a) to execute a scheme and artifice to defraud one or more persons in connection with securities of one or more issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of INOH; and (b) to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of said securities, contrary to Title 18, United States Code, Section 1348.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
## (Securities Fraud)

11. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between June 2013 and February 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARK GOLDBERG, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in INOH, in connection with the purchases and sales of investments in INOH, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

13. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any

property, real or personal, constituting, or derived from proceeds obtained directly or indirectly as a result of such offenses.

14. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 2017R02216

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*MARK GOLDBERG,*

Defendant.

# INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 981(a)(1)(C), 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

*Sylvia Shweder, Assistant U.S. Attorney (718) 254-6092*